Appeal from a dismissal obtained on the state's motion to dismiss the lower court pursuant to Rule 12B. The appellant, who had been practicing public accounting from 1969 until 1994 without incident, entered into a probation agreement with the State Board of Accountancy in connection with... Could you speak up a little bit? Certainly. Certainly. The appellant entered into a probation agreement with the State contention that there were certain elements of the agreement that were either fraudulently induced or altered in some way after an agreement in substance was reached. Notwithstanding this fact, between 1994 and 2004, the appellant sought to regain licensure, was unsuccessful in doing so, ultimately did comply in substance with all the terms of his probation, and in 2004, again, was denied reinstatement. He brought suit in the lower court alleging civil rights violations. I didn't find the stipulation in the record, is it? I have not seen the stipulation either, Your Honor, in the record, and I must apologize. The reason I have a problem with this whole case is I don't know what the stipulation was, why it was signed. Then I have a problem with what the probation violation was. I can't find out what that is, and it seems like a lot of that, to me, kind of pertains because I can't find out why he violated his probation or what the group was thinking about. Indeed, Your Honor, and I apologize for that. I've come to this case somewhat recently, notwithstanding familial relationship between the appellant and myself. I'll try to at least explain some of the facts surrounding it, as I'm aware of them. As you do so, maybe you could let us know why it is we're revisiting some of these facts, because coming to federal court is not a way to get a do-over. To the extent that the litigation has proceeded in the state system, basically that's it. You need a federal claim for this case to continue, and not liking the adjudication in the state system isn't a federal claim. Admittedly, Your Honor, the issues are distinct in the sense that we're dealing with, on the probation has, in fact, been, or the terms of probation are arguably satisfied, at least from appellant's perspective. The federal issues, specifically the 1983 claim, relates to the circumstances surrounding that. Notwithstanding the merits of the argument, there's a long history between the State Board of Accountancy and the appellant, at least as appellant's contentions lay it out, and it's those circumstances, the character of those circumstances, where the civil rights claim stems from. Something of an odd distinction, but it's a distinction that the appellant has utilized as the basis for his appeal, or basis for the federal court action. As far as the terms of the probation agreement are concerned, the appellant was subject to a complaint made by a former client relating to a tax planning strategy that appellant contends was legal. He was placed on a probationary period pursuant to agreement where he was required to undergo a period of suspension, provide restitution, comply with all state, federal, local laws, and the completion of mandatory continuing education. Over the following ten years, he did comply with all those requirements, and intermittently sought reinstatement of his licensure. The last time he did so was in 2004, and he argued that he had complied with all the terms of his probation. The State Board of Accountancy took a different position, and from there, we've reached the present lawsuit, which was initiated, naturally, at the lower level. I guess the first federal issue has to do with abstention. Do you quarrel with the abstention as to the reinstatement of his CPA license? I do. The elements of younger appellant contends are not met. The proceedings were ongoing, admittedly. However, the state interest requirements, as well as the requirement or the factor that the appellant would have an adequate opportunity to litigate the federal claims is not present here. The proceedings were, from appellant's perspective, more of a process of exhausting his administrative remedies, but he felt that there was some bias against him. And as a result of that, he felt that the proceedings would be futile and that his rights would be vindicated, if anywhere, in a more neutral forum. He felt that the federal forum would be a fairer forum. He did not have, in his opinion, an adequate opportunity to vindicate his rights through those administrative proceedings. Why not? He could file with the state court, too, could he not? Absolutely. And he did so. However, the proceedings that he had undergone in the state court, he felt, did not fully vindicate his rights, particularly with respect to the civil rights claims. He pled an administrative mandamus claim in state court that was ultimately unsuccessful, however, did not address the full issues that were being brought before this court. Where do the state proceedings stand now? They're over. They're long since over, in fact. And he lost? He did. He did. So this, in a sense, is his last resort. Well, if they're over... There you go. Yeah. They actually went through the appellate court and he lost. Why aren't we dealing then with, in addition to Younger, but now at this posture, the case Race Judicata? I think there's certain issues that were not litigated completely in the state court, and I appreciate this... Well, not litigated in the state court. California has a slightly different version of use it or use it claim preclusion. It's got the primary right version, but it's got a use it or lose it version. The fact that they weren't litigated is not necessarily an excuse to claim preclusion. I understand, Your Honor. I think there were certain claims that... Well, there's certain claims relating to the civil rights dimension of this fact pattern that... Was the state court incompetent to hear those? I mean, jurisdictionally incompetent? Correct. Because? I believe, Your Honor, that they had not been... They were raised. However, one of the issues relating to the civil rights elements, the 1983 claims, my understanding of the record is the court declined to hear them. The full extent of that is not something I am... And do we have in the record before us what happened ultimately in the state court? We do not. I believe that they, the proceedings in question, were resolved sometime during the briefing schedule, and I do not know if... I do not believe... I've looked at the record. I don't believe that the state record was lodged with this court. Okay. With regard to 1983, we're not dealing with abstention at all. No. Because the district court decided on the merits of the 1983 claim. And there is... I have a few comments to make in the time I have remaining, Your Honors, regarding that. The dismissal seems to have been premised on the issue of prosecutorial immunity, as well as 11th Amendment immunity as far as the state entity is concerned. Prosecutorial immunity does exist. However, what we're dealing with, and I think the lower court failed to take this into account, was that there were contract claims in the complaint, and a sort of a tortious breach of contract, which places those actions outside the purview of prosecutorial immunity. With respect to the... I take it that the contract is... The allegation is failure to live up to the agreement that was made in their capacity as prosecutors. Correct. I'm not sure that giving it a different label eliminates the possibility of immunity applying. Well, as far as the probation is concerned, the appellant's position is that he complied with the terms, and in 2004 attempted to regain reinstatement, but was denied that. And that was the sort of the bargain on the state's side, or their obligation to live up to it. But that is the... Those are the issues very much in brief. Prosecutorial immunity has two pieces to it. One is if you're engaged actually in what is absolute, if you're engaged in non-prosecutorial actions as a prosecutor is qualified. That is to say, there remains immunity. Correct. And it's not so much the entrance into, even though the fraudulent inducement, if you will, of the agreement. What places this issue outside the protection of the prosecutorial immunity, or outside its realm, is the breach of that agreement. And that is something that the act surrounding the entrance into the agreement, but rather the breach thereof. You're one minute over. We have your argument in mind. Let's hear from the other side, and then we'll give you a minute to respond. May it please the Court. I am Stephen Pass, Deputy Attorney General representing appellees and the first issue I would like to address is one of untimeliness and the jurisdiction to hear this appeal. Under Rule of Appellate Procedure 4, Mr. Rosa had 30 days from the date the final order in this case was entered, the final appealable order, in which to file his notice of appeal. In fact, he was over 30 days. The order was filed August 8, 2005. His notice of appeal was filed September 9. Was a judgment ever filed in the district court? A discreet judgment, no. However, it's obvious from the intent of the order that the order wasn't... That is what the rule provides. You've got to file a separate judgment, and that wasn't done. My understanding is, is that an order that's dispositive of the case, such as an order to dismiss, works as a final appealable order. I will grant the Court that we did not have the authority for that. Now, appealable order, depending on the context, means different things. It may be appealable in the sense that it's final, but it may not start the time running for purposes of timeliness of an appeal. Do you have any arguments assuming that we find this timely? I do. Okay. Timeliness, essentially, the question of timeliness, pervades this case. One of the grounds on which the lower court decided to dismiss the case was on statute of limitations grounds. The specific, the only really specific, arguably wrongful act that Mr. Rosa keeps coming back to is this plea agreement that he entered into, which, according to him, was altered by one of the prosecutors from the Attorney General's office, Deputy Attorney General. Was it altered, or the language wasn't taken out? Well, that's, he's saying that the written agreement didn't conform to their oral agreement. That's what he is alleging in his complaint, in his first amended complaint, which is what's at issue here. Or did it? We're only looking at the complaint. And in terms of that, I don't know anything beyond what's on the four corners of the complaint, and according to the complaint, that's what happened. But also according to the complaint, this occurred in late 1993, early 1994. And this action was filed in May of 2004, ten years later. The applicable statute of limitations on that would have been one year, which is the state, at the time, the state statute of limitations for personal injury, and that's what applies. That's the case cited in our complaint. And there's no, if you read the allegations in the complaint, according to the plaintiff, or according to Mr. Rosa, he doesn't even look at the written agreement when it's supplied to him in April of 94, allegedly because he was too busy, and doesn't determine that it doesn't conform to his agreement, this is by his allegations, until seven months later. He then, according to his allegations, goes through the procedure where his license is temporarily suspended, and then, and I believe it's In the meantime, he tried to get the Attorney General's office to rectify that. According to his complaint, yes. However Is that contested? At this point of the litigation, no, because we're still dealing simply with the allegations of the complaint. So we have to assume those are true, then? Yes, you do. But assuming it is true, the claim essentially was right at that point. I'll tell you what bothers me about the case, and it doesn't have an awful lot to do with the ultimate disposition, but we've got a problem here of the Deputy Attorney General Primes saying, if the complaint is true, I'll take this stuff out, and then give us a signature page to be attached to the stipulation, which is a terrible practice, on both of their parts, you know, to just hand out a signature page to attach whatever the other side wants to attach it to. So from the standpoint of the Attorney General's office, I think that was a very poor practice to say, just send this in. And we've got that situation with the complaint saying that there was this agreement. So if we look at the complaint, it would seem like he attached this to a stipulation that they had agreed would be altered, and it never was. And, taking that as true, for the purposes of the motion to dismiss, fine. But you can't wait, since Mr. Rosa felt, according to his allegations in his complaint, that this was wrong at the time, and that this was trampling on his rights. He believed that at the time. Then he had a year from then to seek his remedy here, if in fact he had one. And yet, he waited ten years. Under the allegations of his first amended complaint, in fact, he waits four or five years, from 1995 to 1999, to even ask for reinstatement of his rights. Reinstatement of his license. Which, according to his allegations, and I believe it's paragraph nine, he lost as a result, admittedly, in the complaint, of not following the terms of his probation. He alleges that himself, contrary to the argument heard here earlier. Do we have any indication of what the probation violation was? Not in the pleading. We do not. From either side, we have nothing. No. Nor would it be appropriate in terms of, it would be extrinsic to the motion to dismiss. The inference I got from reading, read pro se filings as best you can, but my impression was that it was an argument that the original wrongdoing was of the character that that probation was denied in the same way that sometimes parole was denied. Because the original crime was so heinous, and that's a separate legal argument. But at least, going through the papers, I got the sense he was trying to tie the denial of probation back to what he alleged was the original wrongdoing that took place at the time the stipulation was entered. Well, he was trying to do that. He says in part, he says the basis of the denial was, and he doesn't say entirely that agreement, so it's implicit that there were other things going on there. However, let's say all that's true. Let's even ignore the nine-year delay beyond the expiration of the statute of limitations in filing the lawsuit, at least as to Deputy Attorney General Primes. There are no specific allegations, really, as to anyone else. Prosecutorial immunity would include a plea bargain, even if it's wrongfully obtained. Prosecutorial immunity is absolute. Some of it is. Well, unless it is not directly related to prosecutorial acts, but in Ashelman v. Pope, there's language there that states that the immunity applies even if the prosecutor's actions are wrongful and the person being prosecuted was genuinely wrong. Of course that's right, but what I'm saying is it applies to certain actions and not to others. If it's absolute, it doesn't matter how wrong they are, but if it's not absolute and qualified, it does. Agreed. You're quite right in saying if it's absolute, he can do anything he wants. He can do anything, however wrongful, but the question is not how wrong it is. The question is whether it's qualified or absolute. Exactly, and the negotiation of a plea bargain falls within the ambit of the prosecutorial immunity. It's inherently prosecutorial. It is the prosecutor's prerogative. Now, your time has expired. If you've got one more thought, we'll hear it. Otherwise, we're finished. Thank you. I would submit it on that to the court. Basically, I don't think there's any 11th Amendment question here. Obviously, the suit cannot proceed against the state or the state agency. I think that's pretty well-settled law, and with that, I would submit. I do have one question. You're not contending that the abstention should pertain to the 1983 claim on appeal. As decided by the lower court, the lower court applied Younger only to the prayer for reinstatement. No, you're not contending that. I am not trying to expand it beyond that, no. I mean, the prosecution, as it was, is over. There's no interference to be had at this point other than reversing the action and reinstating the license. Well, I guess you could have registered a counterappeal in the event we were to overturn it on the merits. You could have preserved the question of whether it should have been a Younger abstention but did not. Did not. Thank you, Your Honor. Thank you. Mr. Rose, would you like some time for rebuttal? Yeah, yeah. With respect to the issue of the timeliness of appeal, I think the court really hit it on the nail, and I have nothing further to add other than the far more articulate version of the court rendered. As far as the plea agreement is concerned, there are admittedly some concerns relating to the negotiations and execution of that agreement. However, as time progressed, this agreement came back into issue. From 1999 through 2004, he sought reinstatement pursuant to this governing document and was denied reinstatement. The fraudulent circumstances surrounding its execution are undeniably important. However, equally, if not more important, is the issue of the denial and the circumstances surrounding that denial. Well, let me be clear about this. The events that took place 10 years before may have had ramifications later, but those events didn't change. And to the extent that there's a cause of action brought against the Deputy Attorney General or, for that matter, the Attorney General's Office itself for what it did in negotiating that agreement, those facts have been known to your client for years. What reason is there for culling the statute of limitations for the claims against the people that allegedly misbehaved more than 10 years ago? I think that the connection to be made lies in the fact that in the five years preceding the institution of suit in this court, the agreement came back into issue as discussed. Appellant contends that there were certain negotiations relating to its terms that took place. Well, the people that misbehaved in the mid-'90s misbehaved in the mid-'90s. And the fact that things happened subsequently doesn't change the fact that your client knew of the alleged misbehavior 10 years ago. No, no, undeniably. As to those parties, I don't understand what basis there could be for tolling the statute. Those same parties were involved in the later denials of reinstatement. And it's the character of that denial, not necessarily the denial itself, but the fact that there was an ongoing prejudice toward the appellant is what's given rise to this action. And that's where the distinction lies, at least as far as the appellant is concerned, Your Honor. I mean, you know, I've lived with these facts. Just on a personal note, I have lived with these facts far, far before I ever became an attorney. However, notwithstanding that fact, the more recent events is what has triggered, in the appellant's position at least, the suit. The practical problem is that, wrongful as events may have been, there are time limits for filing suits. I understand. And if the time has run out, it really doesn't matter the nature of the injustice. What's done is done. And so there are only certain issues that can be raised in this action. Absolutely. And I've tried to tweeze those issues out in oral argument where they've not been as fully developed in the pleadings. Unless there are further questions, I would submit on comments. Thank you very much. Thanks, both sides, for their helpful arguments.
judges: Hug, Fletcher, Clifton